22-2027 Ms. Miller, when you're ready. May it please the court. Marie Miller for the appellant, Mario Rosales. I'd like to reserve two minutes for rebuttal. The complaint here alleges acts by a sheriff's deputy that are so egregious he was fired, prosecuted, and convicted of two felonies for the very conduct that he was deputized to suppress. Deputy David Bradshaw was off duty and with his small child in an unmarked pickup truck when he developed road rage simply because Mr. Rosales lawfully passed him on the left. The deputy tailed Mr. Rosales home, blocked him in the driveway, accosted him with profanities, aimed a gun at him, placing the gun's barrel right next to his own child's head. The whole time Mr. Rosales was in the driveway, he was manifestly trying to calm the man down. And for qualified immunity purposes, this court and at least five other circuits have already clearly defined the Fourth Amendment right at issue here. It is the right of a person who is not suspected of a felony or a violent misdemeanor to be free from more than minimal force when they are not actively resisting arrest or fleeing and have not demonstrated that they pose an immediate threat. Now, if there had been any question about whether this rule of clearly established law applied to the specific conduct of aiming a gun at such a person, this court's decisions in Holland and Maresca removed that doubt. Let me ask about that. This was an egregious conduct by the officer, but the issue before us is whether there's clearly established law relating to the constitutional violation. So if an officer stops somebody properly, maybe even a traffic infraction, and the person is not being obstructive or anything, but when the officer comes in contact with the person to give them the ticket or whatever, notices that the person is carrying a firearm. Is it unconstitutional to say, put that gun away and keep a gun pointed at that person until the gun is disposed of? Is the officer supposed to rely on the good faith of someone he's stopped, he or she has stopped, that that person won't get angry and pull the gun? I'm not aware of any case that addresses that issue, but maybe you have one. Because the cases you cite do not involve the private citizen who is carrying a firearm at the time of the confrontation. I think here we have a distinctly different scenario because Mr. Rosales was at home and had no basis to believe that Deputy Bradshaw was a law enforcement officer. But you stated, one of my questions is going to be state the constitutional, the law that is clearly established. And you stated something at the outset. It's nicely stated, but I don't think that's applicable when the person confronted has a weapon. If you're going to add to that, if the officer is a total jerk and being unreasonable about everything, then it's a constitutional violation. That's a different statement. So what is your statement of constitutional law that applies here and is clearly established here? It is that statement that I articulated. I challenge that by saying I think it's different if the person the officer is confronting is carrying a weapon. I think an officer has a right to, well, I don't think it's established that an officer can point the gun at the person who has a weapon until the person disposes of the weapon. And you haven't provided any case law to the contrary. And now you're saying this case is, so it doesn't seem that that proposition that you stated at the outset is clearly established. This court has addressed cases where an individual, a suspect, is carrying a weapon. We have Nye's and Tenorio v. Fryser. You've got Huff v. Reeves. There was a gun in that case. And Rivas v. Frost, there was a vehicle which can be used as a deadly weapon. And in each of those cases, this court recognized that whether the person posed an immediate threat was a question for the jury. And the same is true when Mr. Rosales simply possessed a gun. And I should emphasize that this court addressed a very similar situation in Polly 3. In fact, this case is on all fours with Polly 3. There, the court established that it is unreasonable for an officer to use force on a person who is even holding a gun in their hand and aiming it at an officer. And even if that person has screamed at the officers and fired warning shots, when the officer is investigating a road rage or traffic incident and has approached the person at home without adequately identifying themselves, that is exactly what we have here. The creation of the risk is the distinction. Precisely, Your Honor. Here, the only basis on which Deputy Bradshaw justifies his use of force is the presence of a firearm in Mr. Rosales' pocket and his approach to the truck, which at that time, again, Mr. Rosales had no basis to believe Deputy Bradshaw was a law enforcement officer and not simply a raging lunatic who was a potential intruder at his home. So the constitutional statement you're making encompasses the fact that the dangerous situation was created by the officer. Absolutely, Your Honor. That's different from the way you first stated it. And that's a very important distinction, and it may be all you need. But the way you stated it initially, I would not be comfortable writing that as a clearly established proposition of constitutional law. I understand, Your Honor. We have two different propositions. One is the more general one I articulated first, and then the other is specifically based on Pauli 3, where an officer cannot manufacture a threat and then use force based on those conditions that the officer recklessly created. And I'll point out that here Deputy Bradshaw's conduct was even less reasonable than Officer White's conduct in Pauli because here Mr. Rosales still did not pose a threat even though he possessed a weapon and had taken a few steps toward Deputy Bradshaw. Our decision in Pauli predated this incident? Yes, it did, Your Honor. Pauli 3, yes. Pauli 3, okay. And Judge Morris, I recognize that you had concurred in Pauli 3 and wouldn't have reached the constitutional issue, but the majority did set forth the clearly established law that Deputy Bradshaw was governed by. And what do the facts here, which we have in addition to some things that went on in Pauli 3, that this officer was actually terminated from his position because of this incident and was convicted, I believe? That is correct, Your Honor. Aggravated assault, right? Aggravated assault. Assault on this individual. Yes, Your Honor. How does that impact your analysis on the clearly established problem? Or does it have any relevance? It does, Your Honor. Even though the state conviction might not have preclusive effect here and the mere violation of a state statute is not the basis for the 1983 action, it does not per se clearly establish the unconstitutionality of the conduct. But it plays into the analysis in a couple of ways. First, the events following the event in issue here illustrate the extreme nature of Deputy Bradshaw's conduct. And we know from the Supreme Court's decision in Taylor v. Riojas and GBR McCoy v. Alamu that when an officer's conduct is obviously unreasonable, then qualified immunity is inappropriate. Isn't that the better argument here? We really don't have case law that's quite on point with the plaintiff having been armed. And in fact, there's cases from other jurisdictions that say as soon as the officer sees someone's arm, they have a right to pull their gun because we don't wait for the possibility that they get shot first. And so what you have here is you've got basically a proposition that every reasonable officer should know that they shouldn't commit aggravated assault on a citizen. I mean, it seems to me we're more in the extraordinary rare case landscape than we are trying to fit it into cases that don't involve an armed suspect. Well, Your Honor, I agree that this point is a strong one, but I also think this falls directly in line with Polly 3 because the brothers in Polly 3 were armed with guns. They were shooting them and shouting at the officers. And still the officer had violated the plaintiff's constitutional rights. So I think under either route, I think either position is strong. Did you take, as far as just the obvious unconstitutional conduct, I thought you argued that in your brief, but perhaps you didn't. Oh, we did, Your Honor. Yeah. Okay. So you took sort of the alternative approach. We have argued, I don't believe Deputy Bradshaw has argued against it. Right. Or that his reckless acts provoked Mr. Rosales to arm himself in self-defense. I'd like to briefly address the municipal liability point here because the sheriff has argued that we've waived this point and that the allegations are not sufficient. But I'd like to point out that Mr. Rosales' attorney maintained that his municipal liability claims were still valid and that a mere substitution was all that was necessary here. That's at appendix pages 107 to 108. It's pretty clear that your client agreed to the dismissal of the complaint that named the wrong party. And there was an expectation that a motion to file a supplemental complaint, an amended complaint, would be made, and it was never made. Your Honor, he could not move for leave to file an amended complaint because the claims against the county had been dismissed with prejudice. He would have had to move under Rule 60B to set aside the judgmental order. As I understood it, the claims against that specific person who was no longer sheriff were dismissed with prejudice, but there was nothing that would prevent you from bringing claims against the correct named defendant who was currently the acting sheriff. Your Honor, although the name might have not been correct, there was no doubt that the party here that was sued was the county. And under the Supreme Court's decision in Monell and in Kentucky v. Graham, the court set out the principle that when a person is seeking to sue a municipality, they can bring an official capacity claim. And that's exactly what Mr. Rosales did here. Well, I thought that was entirely the basis for the agreement that you reached was that you would agree to the dismissal without prejudice of the sheriff who's no longer the sheriff, and you would then amend your complaint to add the proper party, the county commission. And so if that was your agreement, when that didn't happen and you somehow, counsel manages to, were you counsel below? No, Your Honor. Counsel below somehow manages to sign off on a dismissal with prejudice, wouldn't the first thing to be done would be to say, first of all, try to seek rehearing or reconsideration of that dismissal, and secondly, file that motion to amend that you were going to file in conjunction with a motion for rehearing to remove the with prejudice. Your Honor, I might have done that had I been counsel below, but Mr. Rosales was under no obligation to move for reconsideration once the judgment was entered. But I'd like to... Well, the judgment waiver. I mean, he affirmatively signed off, affirmatively, on this decision dismissing the sheriff with prejudice. I think his statement in the hearing needs to be understood in context where he was arguing these claims remain viable and that he was dismissing the sheriff, the man, not the official capacity claims against the municipality. But he approved the order itself as to form, and the order states, all claims asserted against defendant Snyder in both his individual and official capacity are dismissed with prejudice. He did, Your Honor. I think that has to be understood in the light that the district court had denied his request for a mere substitution. But I'd like to reserve the remaining seconds for a brief rebuttal. May it please the Court. Daniel MacIver, Deputy Bradshaw in this case. I think the ultimate question from our perspective, Judge Hart seized on is there is no case out there that specifically goes to the circumstances of this case. Well, even if there isn't, I mean, shouldn't every reasonable police officer on the face of the planet know that you shouldn't commit aggravated assault on a citizen? Certainly as a matter of state law. But the question is, does state law define what's clearly established as a matter of federal law? Well, it does if it meets the task that the Supreme Court has set forth in the exception to the case law requirement, where it is so obvious that every police officer ought to know, even without prior case law. And I think Your Honor is talking about, I believe it's the Hope v. Pelzer line of cases that say that this conduct is so egregious that we don't need a clearly established case to establish that point. And I guess from my view, this meets that standard. I mean, it's not a case where you have a grossly unsanitary prison cell, but it's certainly a situation that is well beyond the norm of the gray area of police conduct. And again, the only thing I can say in response to that is, we don't use state common law to define what's unconstitutional as a matter of federal law. The status of the law in this circuit following Holland was that you couldn't continue to aim a firearm at someone once the situation was under control. That's sort of a starting point here. There's additional case law like the Reeves v. Churchage case, Henry v. Story, where you had, and I think the two critical factors here from a qualified immunity perspective are two things. One is the presence of firearms. The conduct leading up to the application of force in this case, and this kind of gets into the poly analysis, is Deputy Bradshaw followed Mr. Rosales to his house, parked in front of the driveway. Seized him. I take no issue with that, Your Honor. Blocks him in the driveway. Right. And again, I take no issue with that. I didn't take issue with that in the district court either, because Judge Browning asked me that very question, at what point was this gentleman seized. But at that point, the plaintiff emerges from the vehicle, after having been followed, with a weapon. And it's at that point, I think, Go ahead. I think that you look at this case in that acute framework, that the officer is being confronted by a suspect that is armed. The unidentified officer in his personal vehicle, in his shorts and flip flops, is being confronted by a homeowner who's been blocked, followed erratically through the streets, and then followed to his home and blocked in his driveway. Those are the facts, right? And then this officer, not in uniform, starts screaming and yelling at him, with his child sitting in the seat next to him. And we've got a plaintiff who legally owns this gun, is carrying this gun legally, open carry, in the state of New Mexico, right? And this is his home, and the officer knows it's his home. Why isn't this outrageous? Why isn't this just the obvious case of unconstitutional conduct? And why does the gun, why is it even consequential at this point? This man is getting out of his car in his home, open carrying his gun. Why does that present a threat under these circumstances, when the officer has clearly created the risk, which is the Pauli case, Pauli 3? Well, I suppose I take issue somewhat with whether or not this created the risk, because what happened, the risk that got created was Mr. Rosales emerging with the weapon. The law enforcement function here is he's following the gentleman home, he's called a deputy. The risk that got created was this officer being in this place at this time, where he should never have been, ever. And he created that risk of being in a man's home, who was open carrying his weapon into his home, driving home. I mean, how is that not creating the risk here? Any risk to this officer, who was the only one at risk besides his child, was created by himself. And that's what we talked about in Pauli 3, and we very specifically said that is an exception to the normal risk, to the normal rule. And in context, this case involved a deputy, who was performing a law enforcement function. It's clear. State law permits it. That's what we've argued in the brief, that he's performing a law enforcement function. He followed the gentleman home, parked in front of his driveway. He sees the plaintiff emerge from the vehicle. The facts are, the facts, in the light most favorable to the plaintiff, is that he started following him after this plaintiff legally passed him, and he became enraged and started following him. So I don't know how that's within his duties to do so. Well, that would be from the perspective of the officer, that was not the case. I mean, that's the plaintiff's position. From the perspective of the officer, he's engaged in a law enforcement function following the gentleman home. We have to take the facts. There's a recent case involving the police shooting of a fellow in his home, and they kept calling it. I can't remember his name. I wrote it. But it seems pretty similar. And let me read you this quote from the plaintiff's brief from Pauley. It's got an ellipsis. I hope it doesn't – I'm not leaving out anything too essential. But it says, The threat made by the brothers, which would normally justify an officer's use of force, was precipitated by the officer's own actions – I think we should say own unreasonable actions – and Officer White's use of force was therefore unreasonable. I'm giving you – I think the following gives you a lot, but it doesn't – but it's not adequate for your position. I would start from the proposition that if an officer has an awful confrontation with a citizen and he sees the citizen is carrying a weapon, a firearm, that the officer can – there's no law saying, there's no constitutional case I'm aware of that says the officer can point a gun at that person and tell the person to drop the gun before they continue. So we have action by the officer that is, in general, not unconstitutional. But the reason Mr. Rosales was carrying the gun was because of the unreasonable action of the officer, and the officer should reasonably have understood that this person is wondering what the heck is going on here. I pass somebody, he follows me. I think Mr. Rosales was eminently reasonable in fearing for his own safety when this guy, who's not identified in any way as an law enforcement officer, everything about the situation suggests he's not a law enforcement officer, he's not acting like a law enforcement officer. And the officer at that stage should reasonably understand why this person has decided to put a gun in his waistband. And at that point, what would otherwise be a proper use of force, pointing the gun at Mr. Rosales, is now unconstitutional. And maybe Polly isn't exactly the same, but it's awfully close, and the principle so clearly applies here, that there's no qualified immunity defense. Why don't you respond to that? Because I'm giving you a lot in the sense of accepting a lot of your position, but I don't think it's adequate. Why don't you respond to that? Well, again, if, in context, Deputy Bradshaw is following the gentleman home, he stops outside the driveway, none of that, I believe, is unconstitutional conduct on the part of Deputy Bradshaw. Well, don't you think he should reasonably realize that this person would be very fearful in this circumstances, given the nature of the confrontation, and that the victim's action in taking a gun and putting it in his waistband was the result of the officer's actions, and you've got to have a different calculation whether you should start pointing the gun at the person and realize this guy thinks he's about to be attacked by some crazy guy with a gun. Well, it wasn't... So he gets there, he gets there, he parks the car. Mr. Rosales emerges with his weapon. At what point do we decide that it's unconstitutional for the officer, then, to take the action he thinks he needs to take in that circumstance? If we look at the case law, again, from Holland forward from there, the key distinctions in this case that I think the district court seized on was, number one, the presence of a weapon. Secondly, I don't think the district court paid enough attention to this fact. I was going to highlight it, but that is the brevity of the encounter, and the brevity of the encounter, to me, puts this case back in the realm of those cases that suggest that this isn't unconstitutional conduct. If you look at Reeves, Henry versus Story, all the cases where a law enforcement officer points a weapon to diffuse a situation, which Mr. Bradshaw did, and then puts the weapon... Points the weapon to diffuse the situation. I would think it would aggravate the situation in these circumstances. Well, what's the lead? Then Mr. Rosales is even more fearful of the impropriety here. The evidence, the only evidence about needing to diffuse a situation was it appeared that Mr. Rosales was trying to diffuse the anger of the officer, Mr. Bradshaw. I mean, he was the one that was angry and yelling and screaming. The district court made fact findings that Mr. Rosales was calm. He was walking calmly. He wasn't being aggressive. The reason he even approached the vehicle, he did not... He had his gun at his side. He approached the vehicle so that he could talk more calmly and be heard by Mr. Bradshaw, who was yelling. I mean, I don't know what you're talking about, diffusing. You're saying Officer Bradshaw was trying to diffuse the situation by pointing the gun and screaming? That's Officer Bradshaw's position, yes. And once that's over, Mr. Rosales, it's alleged, keeps getting closer and closer and closer. And he says, Mr. Rosales says, let's talk about this. And Mr. Bradshaw says, put your gun away, we can talk about this. That's what happens. You know, you keep brushing off my heck question. But in order for a New Mexico jury to have convicted on aggravated assault, it had to find that he unlawfully assaulted another with a deadly weapon. Unlawfully. And, you know, we use heck all the time against plaintiffs when they bring these cases. But we have here an officer who was convicted of aggravated assault for the exact conduct that's at issue here. And I don't think, whether you argue common law, you know, federal law, we have a factual finding by a jury that this officer unlawfully pointed a gun at Mr. Rosales. I don't know how we ignore that in our analysis here. And, Your Honor, I'm not trying to ignore it either. There's nothing I can do about the criminal conviction. Well, it's significant. You are ignoring it when you're suggesting that Officer Bradshaw was somehow trying to diffuse the situation. He was convicted of aggravated assault of Mr. Rosales. I know, and I understand that. It's a fact. I'm not trying to brush over it. My point was to make a point about what the case law says about the brief nature of these encounters and how that matters in terms of the qualified immunity analysis. Well, you can commit an aggravated assault in the amount of time that this case happened because the jury convicted him of aggravated assault given all of these facts, including the brevity of the encounter. I understand. And, again, the conviction is the conviction. I, again, fall back on the idea that the conviction comes after. It's not at the time of the officer's conduct. And state law, common law, doesn't define what's clearly established. But it's a finding of fact that your client is stuck with for purposes of our analysis under Heck v. Humphreys. You may respond. Your time's up. I understand, and I guess I'm confused about how Heck would apply here in reverse. It's a preclusion doctrine we're talking about, essentially. I understand. Thank you. Counsel? I'd like to just emphasize that we believe this case is on all fours with Pauley. The salient facts that existed in Pauley also exist here. This court in McCauley v. Morales emphasized that what matters is not the existence of all the same facts in a case but whether the salient facts align enough for a reasonable officer to know that what he was doing was unreasonable. And I'll see you in court. Time's up. Thank you. Thank you, counsel. Case is submitted.